UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

UNITED STATES OF AMERICA

                                                          15-cr-643 (PKC)
                                                          20-cv-2412 (PKC)

                    -against-                             OPINION AND ORDER


GARY HIRST,

                              Defendant.
------------------------------------------------------------x

CASTEL, U.S.D.J.

            Gary Hirst, who represents himself pro se, has moved to vacate, set aside or

correct his sentence pursuant to 28 U.S.C. § 2255.  In 2016, a jury found Hirst guilty on four

counts related to a scheme to defraud shareholders of Gerova Financial Group, Ltd. ("Gerova"),

specifically including wire fraud, securities fraud, and conspiracy to commit securities fraud and

wire fraud.  On August 3, 2017, this Court sentenced Hirst principally to 78 months'

imprisonment.  He directly appealed his conviction and sentence, which the Second Circuit

affirmed in a summary order.  United States v. Hirst, 758 Fed. App'x 71 (2d Cir. 2018).

            Hirst's initial motion set forth fourteen grounds for relief.  A later-filed

supplemental motion set forth nine additional grounds.  Many of Hirst's proposed grounds for

relief were either expressly raised as part of his direct appeal or else could have been raised in his

direct appeal.  Hirst does not identify prejudice or cause for the failure to raise them on appeal,

and these claims will therefore be dismissed as procedurally barred.  Additionally, some of the

claims raised in Hirst's supplemental motion do not relate back to his initial motion and will

therefore be dismissed as untimely.  Hirst's remaining claims do not point to evidence or

argument that demonstrate the need for an evidentiary hearing or an entitlement to relief.  Hirst's motion and supplemental motion will therefore be denied.

BACKGROUND.

Hirst was president and chairman of Gerova, a special-purpose acquisition company whose shares were publicly traded on the Amex Equities Exchange and the New York Stock Exchange.  Hirst has a law degree and medical degree, and worked for several years as a hedge fund manager.  An S1 Superseding Indictment charged him with four crimes arising out of a scheme to defraud Gerova shareholders, specifically including one count of conspiracy to commit securities fraud, 18 U.S.C. § 371, one count of securities fraud, 15 U.S.C. §§ 78j(b) & 78ff, conspiracy to commit wire fraud, 18 U.S.C. § 1349, and wire fraud, 18 U.S.C. § 1343. (Docket # 225.)

The Indictment described a scheme to defraud Gerova shareholders for the benefit of Hirst and his co-defendants, in which they issued Gerova shares to Ymer Shahini for no legitimate business purpose while maintaining control of those shares for the benefit of members of the conspiracy.  Shahini was a longtime friend of Derek Galanis.  According to the Indictment, the Gerova shares were issued to Shahini because he was a foreign national not covered by certain SEC regulations, and the co-conspirators agreed to a false story whereby Shahini was to receive shares through a sham consulting agreement that purported to compensate him for identifying an investment opportunity with Weston Capital.  Hirst was alleged to have authorized the issuance of approximately 5.3 million Gerova shares to Shahini, which roughly doubled the public float of Gerova shares, after obtaining an attorney opinion letter.

Hirst's jury trial commenced on September 12, 2016.  The jury returned a guilty verdict on all four counts on September 28, 2016.  At trial, the government offered evidence that

Hirst participated in the scheme to benefit himself and his co-conspirators, and that the shares were issued without the knowledge or approval of the Securities and Exchange Commission or the Gerova board of directors.  The government offered evidence that Hirst signed a fraudulently backdated agreement to issue the shares and concealed their issuance.  The government also offered evidence that Hirst and his co-conspirators generated more than $19 million in proceeds from the scheme, with approximately $2.6 million going to Hirst.

On August 3, 2017, this Court sentenced Hirst principally to 78 months of imprisonment, one year of supervised release, and forfeiture in the amount of $19,038,650.53. (Docket # 437.)  The Court also ordered $19,019,404.36 in restitution.  (Docket # 443.)

Hirst directly appealed his judgment and conviction, which the United States Court of Appeals for the Second Circuit affirmed in a summary order.  United States v. Hirst, 758 Fed. App'x 71 (2d Cir. 2018).  In his appeal, Hirst urged that this Court erred in certain evidentiary rulings and in its calculation of the amount of affected commerce under the advisory Sentencing Guidelines, and argued that the government committed prosecutorial misconduct in its closing summation by attributing a value of $72 million to the shares issued to Shahini.  See id.  The mandate issued on January 4, 2019.  (Docket # 472.)

In addition to his trial and sentence in this case, Hirst also entered a plea of guilty and was sentenced by Judge Abrams in United States v. Hirst, 16 Cr. 371 (RA), a proceeding in which he was charged with four fraud-related crimes involving the issuance of bonds by a Native American tribe.  Hirst pleaded guilty to all four counts and was sentenced by Judge Abrams principally to 96 months' imprisonment, 36 months of which are to be served consecutively to the 78-month sentence in this proceeding.

On May 28, 2020, the Bureau of Prisons ("BOP") released Hirst to home confinement pursuant to 18 U.S.C. § 3624.  According to a BOP website, Hearst's anticipated release date for his sentence in this case and the sentence issued by Judge Abrams is September 25, 2025.[1]

Hirst filed this motion on March 17, 2020, raising fourteen grounds for relief. (Docket # 524.)[2]  The government submitted opposition papers on July 15, 2020.  (Docket # 549.)  In a submission dated July 12, 2020, Hirst requested that his initial motion "be supplemented to add the attached additional Grounds Number 15 through 23." (Docket # 551.) The supplemental motion was filed outside of the one-year limitations period set by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2255(f)(1), meaning that only those claims, if any, that "relate back" to his initial motion are timely.  See Mayle v. Felix, 545 U.S. 644 (2005).

SECTION 2255 STANDARD.

To prevail on a section 2255 motion, the movant must show "constitutional error . . . or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice."  United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quotation marks omitted).  A motion may warrant a hearing if it contains factual assertions that can be proved by competent evidence and a court concludes that the movant could make out a prima facie case for relief at that hearing.  Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009).  "Airy generalities, conclusory assertions and hearsay statements will not suffice because none of these would be admissible evidence at a hearing."  United States v. Aiello, 814 F.2d 109, 113-14 (2d Cir. 1987).

---

[1] https://www.bop.gov/inmateloc/
[2] Unless otherwise noted, reference to "Docket # __" are to the docket in 15 Cr. 643 (PKC).

DISCUSSION.

      I.      <u>Several Grounds Raised by Hirst Are Procedurally Barred.</u>

      Hirst seeks relief based on several grounds that he previously could have raised in his direct appeal.  Because Hirst did not raise these grounds on direct appeal and because he has not demonstrated prejudice or cause, they will be dismissed as procedurally barred.

      "Where, as here, a defendant did not raise an argument on direct appeal, he is procedurally barred from doing so on a collateral challenge under § 2255."  <u>Rajaratnam v. United States</u>, 736 Fed. App'x 279, 281 (2d Cir. 2018) (citing <u>Zhang v. United States</u>, 506 F.3d 162, 166 (2d Cir. 2007)).  "This rule recognizes the 'tension' between collateral challenges and 'society's strong interest in the finality of criminal convictions' and, thus, 'make[s] it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack.'"  <u>Id.</u> (quoting <u>Yick Man Mui v. United States</u>, 614 F.3d 50, 53-54 (2d Cir. 2010)).  "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'"  <u>Bousley v. United States</u>, 523 U.S. 614, 622 (1998) (internal citations omitted).

      To demonstrate "cause," a movant must show "some objective factor external to the defense" presented him from raising the issue earlier.  <u>McClesky v. Zant</u>, 499 U.S. 467, 493 (1986) (quotation marks omitted).  Cause may be demonstrated if the movant did not receive the effective assistance of counsel guaranteed by the Sixth Amendment, as determined under the test articulated in <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984).  A movant may show that appeals counsel failed to satisfy the <u>Strickland</u> standard if counsel "omitted significant and obvious issues while pursuing issues that were clearly or significantly weaker."  <u>Lynch v. Dolce,</u>

789 F.3d 303, 311 (2d Cir. 2015).   "The Supreme Court long ago made clear that the Sixth

Amendment does not require counsel to raise every non-frivolous argument a client requests.   It

is the very function of an effective legal counselor to select among the available arguments and

raise only 'the most promising issues for review.'   Such a tactic avoids cluttering the court with

unnecessary arguments that would 'dilute the force of the stronger ones.'"   Weingarten v. United

States, 865 F.3d 48, 53 (2d Cir. 2017) (quoting Jones v. Barnes, 463 U.S. 745, 752 (1983)).

Hirst's opening appellate brief included sixty pages of argument.   See United

States v. Hirst, 17-0629-cr (2d Cir. June 19, 2018).   It urged that this Court erred in several

evidentiary rulings, failed to correctly calculate the applicable sentencing range under the

advisory Sentencing Guidelines, and that the government's summation falsely and inaccurately

attributed a $72 million value to the Gerova shares involved in the scheme.   (Id.)

Many of the issues raised in Hirst's motion could have been raised in his direct

appeal, but were not.   Ground 1 of Hirst's motion asserts that there is no executed appointment

and oath of office for Andrew Bauer, an assistant United States Attorney who represented the

government in this case.   Hirst urges that Bauer's appointment is not effective and he therefore

could not lawfully represent the United States in its prosecution of Hirst.   Ground 7 asserts that

the government's rebuttal summation included "at least 19 lies, fabrications, misquotations of

testimony, and statements reversing the actual testimony and evidence," resulting in prejudice.

Ground 8 asserts that the government offered into evidence a misleading chart titled "Hirst

Entities" that purported to show the relationship between thirteen entities and the fund transfers

between them, which Hirst asserts misled the jury into concluding that Hirst personally benefited

from a $2.62 million wire transfer.   Ground 9 asserts that the government was factually incorrect

in describing Hirst's material omission of information about the issuance of Gerova shares from

the company's board and its CFO.  Ground 10 asserts that Hirst's prosecution, sentence and restitution order inaccurately attributed Gerova's financial losses to the Shahini scheme, when in truth those losses arose from separate conspiracies that did not involve Hirst.  Ground 11 asserts that in a separate criminal proceeding, United States v. Hallac, 15 Cr. 512 (PKC), the government's prosecution was premised on facts and legal theories that conflicted with those in this proceeding, even though the Hallac case involved the same events and transaction.[3]  Hirst urges that the inconsistencies between this proceeding and Hallac caused a "miscarriage of justice" and deprived him of his right to a fair trial.

For each of these grounds for relief, Hirst includes a boilerplate assertion of the ineffective assistance of appellate counsel, which states:

> This issue was not raised on direct appeal.  If this issue could have been raised on direct appeal, then the performance of Trial Counsel (who also filed the direct appeal) was deficient in that they did not raise the issue on direct appeal, which severely prejudiced Movant's defense, and Movant therefore received ineffective assistance of counsel by their failure to fulfill their duty and obligations.

(Docket # 524.)  Hirst does not elaborate further on why he believes that his counsel performed ineffectively.

Absent a demonstration that counsel omitted significant and obvious issues in favor of weaker ones, Lynch, 789 F.3d at 311, his conclusory assertions of ineffective assistance do not demonstrate cause that excuses procedural default.  See Aiello, 814 F.2d at 113 (a movant does not demonstrate entitlement to section 2255 relief or an evidentiary hearing based on "[a]iry generalities" and "conclusory assertions"); Diaz v. United States, 2017 WL 112609, at *1 (S.D.N.Y. Jan. 11, 2017) (movant does not demonstrate ineffective assistance when he "offers

---

[3] Hallac's guilty plea was accepted on January 14, 2016, and, thus, before the empanelment of the jury in Hirst's trial.

little more than conclusory assertions and generalizations to support the claims.") (Furman, J.);
Brizard v. United States, 2013 WL 1809636, at *5 (S.D.N.Y. Apr. 30, 2013) (conclusory
assertion of ineffective assistance does not demonstrate cause) (Koeltl, J.).  Hirst's lengthy and
detailed appellate brief reflected a close familiarity with the case and potential avenues for
appellate relief.  Hirst does not now explain why the arguments raised in his motion were
significant or obvious, or why those raised by his appellate and trial counsel were weaker.
Lynch, 789 F.3d at 311.

Because Hirst's direct appeal did not raise the issues asserted in Grounds 1, 7, 8,
9, 10 and 11, and because he has not made a showing of cause and prejudice, these claims are
procedurally barred as a basis for relief under section 2255 and will be dismissed.

II.     Hirst Challenged the Admission of Testimony of Chalian on His Direct
        Appeal and His Present Claim Is Procedurally Barred.

Hirst urges that the trial testimony of Shant Chalian, an outside attorney to
Gerova, caused "severe" prejudice and jury confusion.  (Docket # 524, Ground 6.)  Chalian
testified about the number of shares awarded to Shahini, and specifically testified that he did not
draft a document reflecting that Shahani received 5,333,333 shares.  (Trial Tr. 1351-52.)  On his
direct appeal, Hirst characterized Chalian's testimony as "trial-by-ambush" and urged that the
Court erred by permitting the testimony.  (Hirst Appellate Br. at 54.)  The Second Circuit's
summary order did not expressly address Hirt's arguments related to Chalian, but it stated that it
had considered Hirst's remaining argument and viewed them as meritless.  758 Fed. App'x at 80.

"It is well established that a § 2255 petition cannot be used to 'relitigate questions
which were raised and considered on direct appeal.'"  United States v. Sanin, 252 F.3d 79, 83 (2d
Cir. 2001) (quoting Cabrera v. United States, 972 F.2d 23, 25 (2d Cir. 1992)).  Because Hirst

previously raised the submission of Chalian's testimony on direct appeal, he may not relitigate it in this proceeding.

III.   Hirst Has Not Set Forth Facts that Could Demonstrate that His Counsel Was Ineffective.

A.  Ground Three.

Grounds 3, 5 and 15 of Hirst's motion assert that, at trial, he did not receive the effective assistance of counsel guaranteed by the Sixth Amendment.  As noted, the constitutional effectiveness of an attorney's performance is determined by the factors set forth in Strickland, 466 U.S. at 687.  On a claim of ineffective assistance of counsel, a defendant must first overcome a presumption of effective representation by presenting evidence that counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms.  Id. at 688-90.  Second, the defendant must prove prejudice by showing a reasonable probability that, but for counsel's performance, the result of the case would have been different.  Id. at 693-94.  It is insufficient to show that counsel's errors had "some conceivable effect" on the outcome.  Id. at 693.  Instead, the defendant must show "a probability sufficient to undermine confidence in the outcome" of the case.  Id. at 694.

Hirst urges that his trial counsel was ineffective because counsel failed to disclose a plea offer made by the government and failed to advise him whether to pursue a guilty plea. (Motion, Ground 3.)  According to Hirst, a letter from his appellate attorney informed him for the first time that "the supervisor at the U.S. Attorney's Office had said that a joint plea offer . . . was made to Trial Counsel, but had not been accepted."  (Id.)  The offer purportedly would have resolved the charges in this proceeding and in a separate criminal proceeding against Hirst.  Hirst states that he likely would have accepted the offer if it had been communicated to him.

According to Hirst, trial counsel did not advise him that he "may be found guilty at trial," and he states that counsel was motivated to proceed to trial in order to earn attorneys' fees.  (Id.)

Hirst's contention conflicts with the trial record and his own past statements.  At the commencement of trial, the Court inquired on the record whether any plea offers had been made and whether they had been communicated to Hirst.  (Docket # 302 at 2.)  The government stated: "There was no formal plea offer conveyed by the government in this case.  There were discussions about what the parameter of a plea may look like, but it never ripened into the extension of a formal plea offer."  (Id.)  Hirst's attorney confirmed the government's account, and Hirst confirmed that this matched his understanding.  (Id. at 2-3.)  In addition, Hirst previously raised this identical argument in United States v. Hirst, 16 Cr. 371 (RA), and his trial counsel in this matter, Michael Tremonte, filed an affirmation in response.  In the affirmation, Tremonte stated that he engaged in "preliminary discussions" with the government about reaching a disposition through a guilty plea, but that "these conversations never ripened into formal plea negotiations," largely because the expected advisory Guidelines range would exceed 120 months.  (16 Cr. 371, Docket # 859 ¶ 7.)  Tremonte stated that he disclosed these discussions to Hirst, who "unequivocally" was not interested in entering a plea of guilty.  (Id. ¶ 8.)

Hirst has not pointed to evidence that would tend to show that the government extended a plea offer, and instead summarizes a statement from the government that was repeated in a letter written to him by his appellate attorney.  The government and Hirst's trial counsel both confirmed in the trial record that no formal plea offer was made in this case, and Hirst confirmed as much.  To the extent that Hirst also urges that counsel was ineffective because it did not alert him that he could be found guilty at trial, the Court notes that Hirst is a

sophisticated individual with a law degree, and was surely aware of the possibility that a possible outcome of the trial was guilty verdicts on multiple counts of the indictment.

Hirst has not made a showing that his trial counsel failed to communicate a plea offer or was ineffective in not dissuading him from proceeding to trial.

B.  Ground Five.

Ground Five asserts that Hirst's trial counsel was ineffective because he failed to offer evidence of Hirst's expectations regarding the sale of restricted Gerova shares.  Hirst states that he believed the Gerova shares at the center of the scheme were restricted and could not be sold to investors in the United States.  He states that the shares were always accompanied by language stating that they were not to be sold to persons in the United States.  Hirst states that he drafted a detailed memo to his trial counsel explaining this understanding.

Hirst's trial counsel raised the issue of restricted shares to the jury.  In closing summations, counsel argued that "there was no way that Gary Hirst could have foreseen or should have expected that the professionals at those brokerage firms would be ignorant or confused about Reg S, or that they would simply violate the law, as happened in this case." (Trial Tr. 1673.)  Hirst's trial counsel also cross-examined witnesses from the brokerage firms where these shares were deposited about the permissibility of selling shares subject to Regulation S.

Hirst has not made a showing that his counsel performed ineffectively by failing to raise Hirst's understanding of the share restrictions because counsel, in fact, did so.

C.  Ground Fourteen.

Ground Fourteen recites numerous areas in which counsel was purportedly ineffective.  It asserts that counsel failed to: (1) impeach witnesses as instructed by Hirst; (2)

offer expert testimony; (3) object to trial evidence offered by the government; (4) object to the government's failure to meet its discovery obligations; (5) introduce evidence as instructed by Hirst, including unspecified exculpatory evidence and witnesses; (6) object to "all the errors and false information" that Hirst identified in his Presentence Report; and (7) cooperate with appellate counsel.

Hirst's list is conclusory and devoid of specifics.  Hirst does not identify particular witnesses or exculpatory evidence that he believes counsel should have offered.  He also does not identify which witnesses counsel failed to impeach, which discovery materials he believes the government failed to disclose, or the trial evidence that should have been the subject of counsel's objections.  "These conclusory assertions are not enough to meet [Hirst's] 'heavy' burden of establishing a claim of ineffective assistance under Strickland's two-pronged test." Phillip v. United States, 804 Fed. App'x 91, 93-94 (2d Cir. 2020) (summary order).

Hirst has not made out a prima facie case that his trial counsel was ineffective in failing to take the various actions cataloged in Ground 14 of the motion.

IV.    Hirst Waived His Statute of Limitations Defense.

Ground 13 of the motion urges that Hirst's prosecution was barred by a five-year limitations period.  Hirst urges that the most recent act charged in the S1 Superseding Indictment occurred in June 2010 and that the indictment was not returned until September 2015.  (Docket # 524, Ground 13.)  Hirst did not raise this argument as an affirmative defense or in a pre-trial motion to dismiss.  It is therefore waived.  See, e.g., United States v. Walsh, 700 F.2d 846, 855-56 (2d Cir. 1983) ("[T]he statute of limitations is an affirmative defense, not cognizable on appeal unless properly raised below.") (internal citation omitted); accord United States v.

Litwok, 611 Fed. App'x 12, 14 (2d Cir. 2015) (statute of limitations defense waived when not raised in district court proceedings) (summary order).

To the extent that Hirst contends his counsel was ineffective by failing to raise the statute of limitations defense at trial or on direct appeal, he also has not demonstrated actual ineffectiveness or prejudice under Strickland because at trial, the government adduced evidence that aspects of the scheme continued into 2011, i.e., within the limitations period.  (Gov't Mem. at 15 n.4.)

Hirst therefore has not made a showing that he is entitled to section 2255 relief on statute of limitations grounds.

V.    Hirst Has Not Made Out a Prima Facie Case for Relief Based on Newly Discovered Evidence.

Grounds 2 and 4 assert that Hirst is entitled to relief based on newly discovered evidence.  "[N]ew evidence in a Section 2255 proceeding . . . is evidence that is discovered after the original hearing, and which could not, with due diligence of counsel, have been discovered sooner."  Giacalone v. United States, 739 F.2d 40, 43 (2d Cir. 1984) (internal quotation marks and citations omitted).  The "petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."  Bousley v. United States, 523 U.S. 614, 623 (1998) (quotation marks and citations omitted).

Ground 2 of Hirst's motion asserts that a government witnesses, Gerova Chief Financial Officer Michael Hlavsa, was not in fact the company CFO during the relevant period, and that "his claim to be CFO was entirely fraudulent."  Hirst contends that Hlavsa resigned as CFO in May 2008 and was succeeded by Arie Jan van Roon.  He bases this assertion on a document titled "Register of Directors and Officers of Gerova Financial Group, Ltd.," which is annexed to his motion at Exhibit B.  That document states that Hlavsa was CFO from September

2007 until May 2008, and that van Roon immediately succeeded him.  (Id.)  The document, which was signed on October 4, 2017, long after Hirst's trial, includes the language: "Maples and Calder (Hong Kong) LLP Certified to be a true and correct copy as at [sic] 13 September 2010."  (Id.)

While the Court is of the view that the document is likely in error or contains intentional falsehoods, the Court also considers the other possibility that it is accurate, in which event the decision not to out Hlavsa as a pretender was a strategic choice.[4]  Gerova emerged as the surviving public company from a de-SPACing transaction in January 2010.  Marshall Manly testified that he was the CEO and Hlavsa was the "financial guy."  (Tr 249-50.)  Hlavsa testified that Hirst, as president of Gerova, was one of the people to whom he reported as CFO.  (Tr. 324-25.)  He remained as CFO until April 2011. (Tr. 446.)  The government points to SEC filings in 2009 and 2010 and numerous emails in 2010 and 2011 identifying Hlavsa as the CFO of Gerova. (Opp. Mem. 34.)  On cross-examination, Hirst's lawyer took advantage of Hlavsa's status as CEO in May and June 2010 to establish points perceived to be helpful to the defense, including Hlavsa's sign-off on certain SEC filings.  (Tr. 499, 520-522.)  If Hirst elected to cross-examine Hlavsa, challenging his status as CFO in 2010, then government could have easily rebutted the point with documents and other testimony.  Hirst, as president of Gerova, surely knew who the CFO was in 2010.  His decision not to cross-examine on the subject (if he, indeed, thought it would be fruitful) was a strategic choice.

Hirst does not assert that the government was in possession of the "Register" document or other documents that would tend to cast doubt on Hlavsa's status as CFO, such that the government withheld "information that could be used to impeach a key government witness."

---

[4] The document is an out-of-court statement offered for the truth of its content. It is not self-evident that it would be admissible under any exception to the hearsay rule.

United States v. Coppa, 267 F.3d 132, 135 (2d Cir. 2001) (citing Giglio v. United States, 405 U.S. 150, 154 (1972)).  Hirst also has not raised a plausible inference that Hlavsa committed perjury about his tenure as CFO.  See, e.g., United States v. Lighte, 782 F.2d 367, 372 (2d Cir. 1986) ("Perjury requires that a witness believe that the testimony he gives is false.").  As to Ground 2, the Court concludes that Hirst has not made any showing that if the "Register" document had been offered at trial, it is more likely than not that no reasonable juror would have convicted him.  Bousley, 523 U.S. at 623.

Ground 4 references the contents of a 400-page, self-published book written by Hirst's co-defendant, Derek Galanis, titled "Greed and Fear: The Galanis Crime Family" ("Greed and Fear").  Derek Galanis was convicted of both conspiracy to commit securities fraud and securities fraud related to Gerova.  (Docket # 383.)  As described in the motion, the book asserts that co-defendant Jason Galanis "tricked" Hirst and that Shahini's shares were "stolen" from him, and describes "full and extensive details of sealed information" that Hirst contends is useful to his defense.  According to Hirst, "Greed and Fear" demonstrates that the government withheld discovery from him, including impeachment evidence.  Hirst's motion does not identify any evidence described in "Greed and Fear" that falls within the government's discovery obligations pursuant to Brady v. Maryland, 373 U.S. 83 (1963), or Giglio, 405 U.S. at 154.  Moreover, Hirst's description of the purported evidence contained in "Greed and Fear" is vague and conclusory.  Hirst has not made any showing that he is entitled to section 2255 relief based on the contents of "Greed and Fear."

VI.   Hirst Has Not Made Out a Prima Facie Case of Actual Innocence.

Ground 12 of Hirst's motion asserts that he is actually innocent.  "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely

than not that no reasonable juror would have convicted him." <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998) (quotation marks omitted).  The Supreme Court has "not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence," but has left open the possibility that such relief may be possible in an "extraordinary case" where a constitutional violation results in the conviction of an actually innocent person.  <u>McQuiggin v. Perkins</u>, 569 U.S. 383, 392 (2013).

Hirst has not met the high bar of demonstrating actual innocence.  He references the discovery of "new evidence," cites "fake evidence" and "lies" offered by the government, and describes his conviction as "a fundamental miscarriage of justice."  The purported new evidence includes "Greed and Fear," authored by his convicted co-defendant.  Hirst also asserts that his trial counsel failed to offer impeachment evidence as to a Hlavsa, including his purported use of hit men and "laundering the money for the 9/11 terrorists . . . ."  These proposed grounds for relief are largely encompassed by Hirst's other arguments.  To the extent they are not, Hirst's assertions of actual innocence are vague, conclusory and unsupported, and fall short of demonstrating an "extraordinary case" of constitutional violations resulting in the conviction of an actually innocent person.

Hirst therefore has not made any showing that he is entitled to section 2255 relief on the grounds of actual innocence.

VII.   <u>Hirst's Supplemental Motion Does Not Set Forth a Basis for Relief.</u>

A.  <u>Grounds 20, 22 and 23 Will Be Dismissed as Untimely.</u>

Hirst's judgment became final on March 14, 2019, which was ninety days after the Second Circuit affirmed his conviction and sentence.  He placed his motion in the prison mail system on March 9, 2020, which was within the one-year limitations period set by AEDPA.  28

U.S.C. § 2255(f)(1).  Hirst's supplement to his motion is dated July 16, 2020, which is outside

the one-year AEDPA limitations period.  Claims set forth for the first time in the supplemental

submission are therefore untimely unless they relate back to his original motion.

   The Federal Rules of Civil Procedure apply to a section 2255 proceeding, which

is civil in nature.  Mayle v. Felix, 545 U.S. 644, 654 (2005).  Under Rule 15, Fed. R. Civ. P., an

amended or supplemental pleading relates back to the timely pleading "if the original and

amended pleadings 'ar[i]se out of the conduct, transaction or occurrence.'"  Mayle, 545 U.S. at

655. (quoting Rule 15(c)(2)).  Rule 2(b) of the Rules Governing Section 2255 Proceedings for

the United States District Courts, as amended in 2019, provides that a section 2255 motion must

"specify all the grounds for relief available to the moving party" and "state the facts supporting

each ground . . . ."[5]  The Supreme Court has stated that the same provision in the rules governing

section 2254 petitions "is more demanding" than the notice pleading required by Rule 8, Fed. R.

Civ. P.  Mayle, 545 U.S. at 655.  Although Mayle involved a motion under section 2254, courts

have applied its reasoning to section 2255 motions.  See, e.g., Ozsusamlar v. United States, 2013

WL 4623648, at *3 (S.D.N.Y. Aug. 29, 2013) (Wood, J.).

   Mayle held that an amended motion that collaterally attacks a defendant's

conviction "does not relate back . . . when it asserts a new ground for relief supported by facts

that differ in both time and type from those the original pleading set forth."  545 U.S. at 650.   "It

is not sufficient for a claim to simply come from the same 'trial, conviction, or sentence.'

Rather, relation back is permitted only insofar 'as the original and amended petitions state claims

that are tied to a common core of operative facts.'"  Ozsusamlar, 2013 WL 4623648, at *3

(quoting Mayle, 545 U.S. at 650, 662-64).  Mayle concluded that an amendment did not relate

---

[5] Available at https://www.uscourts.gov/sites/default/files/rules_governing_section_2254_and_2255_cases
_in_the_u.s._ district_courts_-_dec_1_2019.pdf

back when the original petition asserted a Sixth Amendment violation related to video testimony but the supplemental submission asserted a Fifth Amendment violation related to interrogation tactics.  545 U.S. at 648-49.  Ozsusamlar likewise concluded an amendment asserting ineffective assistance at trial did not relate back to the original motion's assertion of ineffectiveness at sentencing.  2013 WL 4623648, at *4; see also Soler v. United States, 2010 WL 5173858, at *4 (S.D.N.Y. Dec. 20, 2010) (in a section 2255 proceeding, "courts find relation back only when underlying claims are the same; when facts and legal theories are intertwined; or when one theory clarifies and supplements the other.") (Holwell, J.) (citations omitted; collecting cases).

      Certain arguments raised in the supplemental submission do not relate back to his original motion.  Ground 20 asserts that the government made improper arguments in its opening statement.  The original motion did not seek relief due to any aspect of the government's opening statement, and Ground 20 is not directed to a common core of operative facts described in the motion.  See Mayle, 545 U.S. at 664.

      Ground 22 asserts that the government misstated and misrepresented certain facts about trial exhibits when questioned by the Court outside the presence of the jury.  The original motion did not seek relief based on such statements to the Court, and Ground 20 is not directed to a common core of operative facts described in the motion.  See id.

      Ground 23 urges that the government abused its prosecutorial discretion, and asserts that "[o]nly four out of sixteen prosecution witnesses provided any testimony about Hirst's conduct," which "overwhelmed the relevant evidence and prejudiced Mr. Hirst's right to a fair trial."  (Supp. Motion at 18.)  Hirst suggests that the government sought to arouse the jury's sympathies by eliciting the testimony of victims and caused confusion and unfair prejudice

through its questioning of other witnesses.  Ground 23 is not directed to a common core of

operative facts described in the initial motion.  See id.

The Court therefore concludes that the arguments raised in grounds 20, 22 and 23

of Hirst's supplemental motion do not relate back to his original motion, and are therefore

dismissed as untimely.

### B. Certain Arguments Raised in Grounds 19, 21 and 23 Will Be Dismissed Because They Were Previously Raised on Appeal.

Hirst's direct appeal urged that the government improperly referred to the value of

Shahini's shares as $72 million, that witnesses Nazan Akdeniz and Arthur Laby offered improper

opinion testimony, that the government improperly offered evidence of a scheme that did not

relate to Hirst and that it was improper for the government to call a computer forensics expert as

part of its case-in-chief.  (Hirst Appellate Br. at 17-21, 30, 45-51.)  The Second Circuit expressly

rejected Hirst's arguments related to the $72 million figure, the Laby testimony and the

purportedly unrelated scheme.  Hirst, 758 Fed. App'x at 73-76.  It did not expressly address the

arguments related to Akdeniz or the computer forensics expert, but noted that it had considered

Hirst's remaining arguments and considered them meritless.  Id. at 78.

Hirst's supplemental motion revisits these arguments in Grounds 19, 21 and 23.

Because Hirst is procedurally barred from re-raising arguments previously raised on his direct

appeal, these claims will be dismissed.  See Sanin, 252 F.3d at 83 ("It is well established that a §

2255 petition cannot be used to 'relitigate questions which were raised and considered on direct

appeal.'").

### C. Grounds 16 through 23 Are Procedurally Barred.

The remaining aspects of Hirst's claims in Grounds 19, 21 and 23 could have

been raised in his direct appeal but were not.  Likewise, the entirety of Grounds 16, 17, 18, 20

and 22 could have been raised on direct appeal but were not. Hirst's assertion that counsel was ineffective for failing to raise these issues on direct appeal does not demonstrate cause or prejudice. The claims will therefore be dismissed as procedurally barred.

Specifically, Grounds 16 and 17 assert that the government failed to correct testimony from Michael Hlavsa that it knew to be false. The government asked Hlavsa if he "develop[ed] a belief" as to how a potential investment came to the attention of the Asia Special Situation Acquisition Company, the "SPAC" that was the predecessor to Gerova, of which Hlavsa was CFO. (Tr. 345.) Hlavsa responded in part that "I believe the introduction of Weston probably came to Gerova through a gentleman by the name of Joseph Bianco." (Id.) Defense counsel objected to the question as speculative, and the government proceeded to inquire as to how Hlavsa formed this belief. (Id. at 345-46.) Hirst asserts that the government knew Hlavsa's testimony was false because a witness in a different proceeding described a different understanding of how the Weston investment came about. Similarly, Ground 17 urges that Hlavsa falsely testified that he "copied and pasted" an instant message chat with Hirst, testimony that Hirst asserts the government knew to be false because Hlavsa had saved all Skype chats with Hirst.

Ground 18 asserts that testimony from the daughter of the victim of an investment scheme gave jurors a misimpression about the extent of losses attributable to Gerova, versus other investment losses. Hirst asserts that the government did not attempt to correct or clarify her testimony.

Ground 19 asserts a variety of instances in which Hirst asserts that the government raised improper argument during the course of trial, including a description of

Hlavsa as "truthful," mischaracterizing Regulation S shares as unrestricted, calling certain agreements "fake," and mischaracterizing certain evidence as "material."

Ground 21 urges that the government raised forty-five improper arguments in closing summations, including unfairly prejudicial characterizations and statements that lacked evidentiary support.

As previously discussed, Grounds 20, 22 and 23 will be dismissed because the arguments they raise are time-barred.  If they were not time-barred, they would be dismissed as procedurally barred.  Ground 20 urges that the government's opening statement was improper because it mischaracterized certain evidence, such as describing documents as "fake" or "backdated."  Ground 22 urges that the government made certain misstatements of law to the Court outside the presence of the jury.  As previously discussed, Ground 23 describes nine incidents that Hirst describes as "abuses of prosecutorial discretion."

Each of these arguments could have been raised as part of Hirst's direct appeal, but were not.  In an attempt to demonstrate prejudice cause, Hirst makes an identical assertion for each of these grounds, stating:  "If this issue should have been raised on direct appeal, and if it was not raised on direct appeal, then the performance of Trial Counsel (who also filed the direct appeal) was deficient in that they did not raise the issue on direct appeal, which severely prejudiced Movant's defense, and Movant therefore received ineffective assistance of counsel by their failure to fulfill their duty and obligations."  Again, these conclusory assertions do not demonstrate ineffective assistance of counsel.  Aiello, 814 F.2d at 113; Diaz, 2017 WL 112609, at *1.  Hirst therefore has not demonstrated prejudice or cause.  These grounds for relief will be dismissed as procedurally barred.

D.  <u>Hirst's Claim Related to Newly Discovered Evidence Is Meritless.</u>

In Ground 15, Hirst asserts that he has obtained new evidence in the form of an investigative report that shows a "criminal conspiracy" to drive down Gerova share prices. (Supp. Mem. Ex. A.)  The document is a memorandum to files dated June 22, 2011, with the subject line "Scott Raymond Hintz Investigation."  No author is identified.  The memo describes Hintz's criminal history, which included a conviction and sentence for bank fraud in 2003, followed by the revocation of his supervised release for submitting false invoices while employed by a Gerova-controlled entity.[6]  (<u>Id.</u> at 1-3.)  The memo states that Hintz later demanded millions of dollars from Gerova, and spread false and misleading information about Gerova while profiting "from selling short sales of Gerova," leading to $800 million in shareholder losses.  As characterized in the memo, Hintz spread false rumors that Jason Galanis was engaged in acts of fraud, and the memo describes Galanis as "valued employee" of a Gerova subsidiary.  (<u>Id.</u> at 8-9.)

The memo asserts that Hintz worked in concert with an analyst named Keith Dalrymple.  (<u>Id.</u> at 10-11.)  At trial, a government witness testified that "an article went around the world by a short seller named Dalrymple and that created a free-fall and the stock tanked." (Trial Tr. 116.)  The witness characterized the article as "very negative."  (<u>Id.</u>)

According to Hirst, the actions of Hintz caused "the collapse of Gerova" and shareholder losses, and "[t]he government knows why Gerova investors lost money . . . ."  Hirst states that during his trial and prosecution, Sally Yates was Deputy Attorney General of the

---

[6] The government explains that, based on a review of public records, Hintz was sentenced in the Northern District of Georgia principally to 57 months' imprisonment in 2003.  <u>United States v. Hintz</u>, 03 Cr. 131 (N.D. Ga.).  After release, Hintz briefly worked for a Gerova subsidiary and was terminated for theft.  Hintz's supervised release was revoked as a result.  After his termination, Hintz sued Gerova and others, including Hirst, but voluntarily dismissed his action.  <u>Hintz, et al. v. Gerova Financial Group LTD., et al.</u>, 11 Civ. 265 (N.D. Ga.).

United States, and that Yates oversaw proceedings against Hintz in 2011 while she was U.S. Attorney for the Northern District of Georgia.  (Supp. Mem. at 2.)  It appears to be Hirst's contention that Yates knew that Hintz, rather than Hirst, was responsible for the losses of Gerova shareholders.  Separately, he points to the prosecution of David Bergstein in this District (and before the undersigned judge) and asserts that Bergstein's indictment "describe[d] the whole scheme . . . ."  (Id. at 3.)

   Hirst does not suggest that the government knew about or possessed the Hintz memo and failed to produce it to him.  Rather, it appears to be Hirst's contention that the government knew that the Dalrymple report caused a significant loss of shareholder value, and that, through Yates, it knew or should have known that Dalrymple's negative views of Gerova were a result of Hintz's influence or coordination.

   The government notes that, at trial, it offered evidence that the value of Gerova shares collapsed following the Dalrymple report, and never contended that the full drop in Gerova's share price was due to the Shahini shares.  (Trial Tr. 116-17; GX 901.)  The jury was therefore informed that the Dalrymple report led to a decline in share value.  Further, Hirst's argument about the Hintz report is convoluted, and premised entirely on an anonymously authored memo written for unknown reasons.  Hintz's criminal proceedings in Georgia related to conduct with no apparent connection to the scheme at issue in this case.

   Hirst has not demonstrated that the "newly discovered evidence" of the Hintz memorandum entitles him to relief.  See Bousley, 523 U.S. at 623.  He also has not explained how the contents of the indictment in the Bergstein proceeding would entitle him to relief.

CONCLUSION.

Hirst's motion and supplemental motion do not set forth a basis for relief or demonstrate a need for an evidentiary hearing.  They are therefore DENIED.  The Clerk is respectfully directed to terminate the motion in the criminal case (15 Cr. 643, Docket # 524) and to close the civil case (20 Civ. 2412).

Hirst has not made a substantial showing of the denial of a constitutional right and, accordingly, a certificate of appealability will not issue.  28 U.S.C. § 2253; see Blackman v. Ercole, 661 F.3d 161, 163-64 (2d Cir. 2011).  This Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and in forma pauperis status is denied.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated:  New York, New York
        April 18, 2022

COPY MAILED TO: Gary Hirst, P.O. Box 915559, Longwood, FL, 32791